## Estate of May S. Weller, Deceased.

Argued October 3, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Wm. F. Berkowitz,* and with him *M. H. Salsburg* and *O. H. Dilley,* for appellant.

*William S. McLean, 3rd,* for appellees.

OPINION BY CUNNINGHAM, J., January 25, 1933:

This appeal had its origin in the third attempt of Ford Weller, the appellant, to obtain the corpus and accumulations of a trust fund created by the will of May S. Weller for the benefit of her nephews, Jeremiah S. Sanders, Jr., and Morgan W. V. Sanders, the children of her deceased brother.

May S. Weller, the wife of Dr. Morgan Weller, died January 25, 1915, leaving a will dated July 9, 1910. The ninth paragraph thereof reads: "I give and bequeath to Jeremiah Shindle Sanders, Jr., and Morgan Weller Virginius Sanders, children of my deceased brother, Harry S. Sanders, when they shall respectively arrive at the age of eighteen years each the sum of one thousand dollars; said gift to become operative only upon the said money being used for the purpose of providing them a college education in the University of Pennsylvania, and for no other purpose, the same to be paid in such monthly amounts as my executors and trustees hereinafter named shall deem fit and proper." The will was duly probated in Luzerne County and the fund of $2,000 is now in the hands of

Miners Savings Bank of Wilkes-Barre, as trustee. It is apparent from a reading of her will that the primary purpose of testatrix was to provide for her husband, father, and nephews. After gifts to several churches, she bequeathed to her husband the income from the remainder of her estate ''during the term of his natural life'' with the proviso that he maintain her father during the latter's lifetime. Her household goods and a diamond watch were given to her nephew, Jeremiah, upon the death of her husband. By the tenth paragraph she made a further provision for her nephews to the effect that when each arrived at the age of twenty-three, he should receive the income on $5,000 during his lifetime, with remainder over to his children or grandchildren, or, failing such takers, the principal to revert to her estate and be disposed of as provided in the twelfth paragraph. That paragraph reads: ''On failure of lawful issue or issue of issue of my said nephews, Jeremiah Shindle Sanders, Jr., and Morgan Weller Virginius Sanders, as above provided, the sums herein devised to them shall vest in the legal heirs or assigns of my said husband, Dr. Morgan Weller; and I do hereby devise and bequeath all of my estate not otherwise disposed of by this will to the said legal heirs or assigns of the said Dr. Morgan Weller, after his decease.''

The husband of testatrix died, testate, April 6, 1919, and by his will devised and bequeathed his residuary estate ''to [his] brother, Ford Weller, his heirs and assigns absolutely.'' It is under this provision of the will of the husband of testatrix that appellant now claims.

One nephew, Jeremiah, reached the age of eighteen on November 4, 1924, and the other on October 8, 1925. In October, 1928, the present appellant, a stranger to the blood of the testatrix, first petitioned the court below to have the fund paid over to him. The reason

he assigned was that the nephews had failed "to avail themselves of an education in the University of Pennsylvania." After consideration of the testimony then presented, the court dismissed his petition, without prejudice, on the ground that "the young men had not had sufficient time to avail themselves of the benefits of said legacy." Another application was made in October, 1930, with like results, and the present petition was filed in November, 1931. The legatees filed separate answers and, after a hearing, HELLER, P. J., entered a decree, under date of June 14, 1932, dismissing appellant's petition. From that decree we now have this appeal.

As we understand appellant's brief, it is the contention of his counsel that the money now in the hands of the trustee may be expended for the benefit of the legatees only after they have "matriculated as students for the full academic course in the college department of the University of Pennsylvania." Attention is directed to the fact that they have had a period of seven years within which to comply with these requirements, and it is argued that the only inference warranted by the testimony is that they cannot meet them. The conclusion is drawn that the legacies have, therefore, fallen into the general residue of their aunt's estate and have passed to appellant under the provisions of her husband's will.

Counsel for the nephews replies that the language of testatrix amounts, at most, to a restriction or limitation upon the use of the money, and that the legacies should not be decreed to have lapsed so long as the purpose for which they were given is possible of fulfillment. Moreover, it is contended that the testimony shows the legatees have met the requirements under which their aunt intended the gifts to become "operative."

No facts are in dispute under the evidence, but these

opposing contentions render it incumbent upon us to consider the legal effect of the material facts in the light of the intention of the testatrix, as that intention may be ascertained from a consideration of her situation at the time the will was executed and of the language used by her.

In endeavoring to arrive at the intention of the testatrix, we may start with the assumption that she was familiar with the University of Pennsylvania as "an aggregation or union of colleges" (Com. v. Banks, 198 Pa. 397, 400); we may also safely assume that she knew the sum of $1,000 would be entirely inadequate to enable a student to take the usual classical or scientific course of four years in the collegiate department of the university. Her nephews were small boys when she made her will; their father was dead and the testatrix evidently knew their mother's financial circumstances. It seems clear that she could not have intended these legacies to provide the beneficiaries with "a college education" in the strict and literal sense of a four years' course terminating in a degree. We think it is equally clear that it was her purpose to assist them in obtaining at the university such educational advantages as would fit them to support themselves, and their dependents, by engaging in some useful and gainful occupation. The testimony of the legatees fully accounts for their delay in entering the university. Jeremiah testified, in substance, that the family consisted of his widowed mother, his grandmother and his brother; that when he reached the age of eighteen his mother was employed by the Lackawanna Railroad and earning $30 a week; that he graduated from a parochial school and attended high school until he was about nineteen, when he was obliged to go to work to help in supporting the family; and that he began as an office boy at $12 a week, was later employed by the Western Electric and the Lackawanna

Railroad at an average salary of $24, and had saved $600. In November, 1930, his mother met with a serious automobile accident in which she suffered a fractured skull and a permanent injury to her arm, as a result of which he was obliged to quit work and remain at home to take care of her for a number of months. Morgan went to high school until he was about twenty and at the date of hearing was employed by the Fletcher Dry Goods Corporation at a salary of $30 a week.

The $600 saved by Jeremiah out of his earnings dwindled to $75, chiefly by reason of the expenses incurred through his mother's injuries. In the summer of 1931, both boys, with the consent of the trustee and by using $400 from the fund, matriculated in the physical culture course of the summer school of the college. They testified their purpose was to fit themselves to obtain salaried positions as physical culture instructors in high schools, etc., their earnings to be applied toward taking the regular college course at the university. The testimony of Jeremiah upon this feature of the proceeding reads: "Q. Have you at any time since you were eighteen been in such financial position that you were able to enter college? A. No sir. Q. Do you intend, if your position becomes such financially that you are able to go to college to take the regular course at the University of Pennsylvania? A. Yes, if we have the means. Q. What department of the University of Pennsylvania were you enrolled in? A. Physical culture. Q. Is that one of the regular courses given by the University of Pennsylvania? A. Yes sir. Q. How long a course is that? A. Three years."

Each legatee received a certificate headed, "University of Pennsylvania, The Summer School of the College," and certifying that he had pursued the courses in "physical education," therein specified, for

the required number of hours and attained passing grades in each. The certificates are signed, "Paul H. Musser, Dean of the College," and "John Dolman, Jr., Director of the Summer School."

· The learned president judge of the court below, who had the advantage of seeing and hearing the witnesses, expressed these views in the opinion dismissing appellant's petition: "There is a very wide latitude in the term 'a college education,' and inasmuch as these boys have prepared themselves to a point where they could matriculate at the University of Pennsylvania in one of the courses, and having elected to pursue a physical education which equips them for a life work, we feel that they have qualified under the terms of the will to a use of this money in the pursuance of a further education, and we believe that it was the intention of the testatrix that these boys should have the benefit of a course at the University of Pennsylvania, which would be of future assistance in their life work."

Upon a review of the record, we are not disposed to disturb the conclusions of the court below. We think that tribunal was justified in concluding that the legatees are making an honest effort to fulfill the requirements specified by the testatrix as essential in order that the gifts contained in the ninth paragraph of her will may become operative. At least, appellant has not shown any facts which should move a court to deprive these nephews of testatrix, for whose welfare she has shown such concern, of an opportunity to obtain assistance in securing a college education by turning the fund over to a stranger to her blood, not even named in her will.

The appeal is dismissed and the decree affirmed at the costs of appellant.