FRIEDA KUVIN EPSTEIN, EXECUTRIX, ET AL., PLAIN-
TIFFS, v. HERBERT KUVIN, ET AL., DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided April 25, 1952.

*Mr. Max M. Albach,* attorney for the plaintiffs.

*Mr. Roswell S. Nichols, Jr.,* attorney for the defendants.

FREUND, J. S. C. The plaintiff executrix filed the complaint for construction of the will of her deceased mother, Fannie Kuvin. The testatrix devised and bequeathed property to her sons, Samuel Kuvin and Herbert Kuvin, the defendants herein, and by the eleventh paragraph of her will directed that if she should die before her grandson, Sanford Kuvin, "has completed his college education, then and in that event" they should pay a total annual sum of $1,000 "toward the expenses of a college education" until he "completes his college education." In June, 1951, Sanford completed a premedical course at the University of Pennsylvania, receiving the degree of Bachelor of Arts. He has applied to and been accepted by a college for the study of medicine.

The question is: Did the obligation for the payments imposed by the testatrix terminate upon the completion of the academic pre-medical course which Sanford Kuvin pursued, as the defendants assert, or, as the plaintiffs contend, does it continue during the period that Sanford is at college engaged in the study of medicine? What did the testatrix mean by the phrase "completes his college education"? Did she mean to limit it to a liberal arts education or did she use the term in the broad sense to include professional training as well?

It is fundamental that the prime duty of a court in the construction of a will is to ascertain the intention of a testator and to effectuate it. The testator's meaning and intention should be "determined, not by fixing the attention on single words, but by considering the entire will and the surroundings of the testator when he executed the will, and by ascribing to him, so far as his language permits, the common impulses of our nature." *Coyle v. Donaldson,* 91 *N. J. Eq.* 138 (*E. & A.* 1919); *Blauvelt v. Citizens Trust Co.,* 3 *N. J.* 545 (1950).

"The spirit prevails over the letter of the testament. All principles and rules in aid of interpretation yield to the intention revealed by the context. And words are to be given their primary and natural significance unless the context renders it clear that they were employed in a different sense. * * * And blind adherence to prece-

dent as respects the meaning of a particular phrase is fraught with peril to the testamentary design, for, as said, intention is to be gathered from the instrument as a whole, and it rarely happens that the wills are substantially alike." *National State Bank of Newark v. Stewart,* 135 *N. J. Eq.* 603 (*E. & A.* 1944).

In construing the will the court may depart from its strict wording or read the words or phrase in a sense different from that ordinarily attributed to it when such course is necessary in order to give effect to the intention of the testator. *Herbert v. Central Hanover Bank & Trust Co.,* 131 *N. J. Eq.* 330 (*Ch.* 1942), affirmed 132 *N. J. Eq.* 445 (*E. & A.* 1942); *Barrett v. Barrett,* 134 *N. J. Eq.* 138 (*Ch.* 1943); *Fidelity-Philadelphia Trust Co. v. Jameson,* 137 *N. J. Eq.* 385 (*Ch.* 1946).

"The word 'college' is not a word of art which, by common understanding, has acquired a definite unchanging significance in the field of education. Its meaning varies with its context. Though at times it is used to denote any institution of higher learning, including institutions for professional or post-graduate study, it is frequently used * * * to denote an 'undergraduate' school for instruction in liberal arts having a course of study commonly requiring four years for completion and leading to a bachelor's degree." *In re Kelly's Estate,* 285 *N. Y.* 139, 33 *N. E. 2d* 62 (*Ct. App.* 1941).

College includes both the undergraduate, and the graduate and professional departments of a college or university. It applies as well to medical colleges. *People v. Albany Medical College,* 26 *Hun.* 348 (*Sup. Ct.* 1882), affirmed 89 *N. Y.* 635 (*Ct. App.* 1882); *Shepard v. Union & New Haven Trust Co.,* 106 *Conn.* 627, 138 *A.* 809 (*Sup. Ct. Err.* 1927); 14 *C. J. S., Colleges and Universities,* sec. 1, page 1327; *Webster's International Dictionary* (*2d ed.*)

There is a very wide latitude in the term "a college education" and it should be construed to include training for the lifework of the beneficiaries if that intention of the testator can be gleaned from the will. *In re Weller's Estate,* 108 *Pa. Super.* 137, 164 *A.* 140 (*Pa. Super.* 1933).

The New Jersey statute regulating licenses for the practice of medicine, *R. S.* 45:9–8, provides, "Every applicant for

admission to examination for a license to practice medicine and surgery shall * * * prove to the board that he has received a diploma from some legally incorporated professional school or college * * *."

To enable the court to understand the meaning and application of language used in a will, "proof is generally admissible of the situation existing when the will was made— the surroundings of the testator, his property and the condition of the persons taking under his will." *Fidelity Union Trust Co. v. Noll*, 125 *N. J. Eq.* 106 (*Ch.* 1939); *Blauvelt v. Citizens Trust Co., supra; In re Fox*, 4 *N. J.* 587, at 594 (1950); *In re Goldfaden*, 7 *N. J.* 450 (1951).

What were the circumstances surrounding the execution of the will? The testatrix, Fannie Kuvin, was the grandmother of Sanford Kuvin. His father had died when he was three years of age, since when he and his mother, the plaintiff executrix, had made their home with the decedent. She was extremely fond of him, and on occasion referred to him as "her crown," "the apple of her eye." The boy manifested an interest in the study of medicine and there was testimony that his grandmother wanted him to be a physician. At the time of the testatrix's death Sanford was in his freshman year at New York University and she had paid his tuition for that year. Later, he transferred to the University of Pennsylvania where he pursued a pre-medical course, graduating in June 1951, first in his class of 325. While awaiting admission to a medical school, he continued his medical education as a postgraduate student at the University of Pennsylvania. Of approximately 20 applications to various medical schools, the only acceptance he has received is from the University of Bern, Switzerland, to commence in the summer semester of 1953. He testified that if he should be accepted by an American medical college, he would prefer to study medicine in this country. Meanwhile, he has been awarded a free-tuition scholarship in Medical Microbiology at the University of Pennsylvania for the academic year 1952-1953.

The defendants and their children are beneficiaries under the will of the decedent. Samuel Kuvin is charged with a contribution of $600 per annum and Herbert Kuvin with a contribution of $400 per annum toward Sanford's college education. They contend that having made annual contributions for the three years of Sanford's college education following his grandmother's death until he received his bachelor's degree, their obligation has been discharged. The plaintiff, on the other hand, contends that their obligation continues until Sanford has completed his medical education.

From a reading of the will and a consideration of the circumstances surrounding it and of the testimony adduced at the trial, there can be no doubt of the intention of the testatrix. The close relationship of the parties, the early demise of Sanford's father, the boy's avowed interest in the study of medicine and his outstanding scholarship—all lead to a construction that the testatrix intended that he receive annual contributions which would enable him to become a medical doctor. Clearly, when she used the words "completes his college education," she comprehended contributions by the defendants until completion of his professional education. It would be unreasonable to assume that she intended that the defendants be charged with contribution for only part of his education. In her contemplation, his education would not be completed until his graduation as a Doctor of Medicine. Doubtless, she intended to do for him what his father might have done had he lived, and while she charged his uncles with the contribution, she provided by devises and bequests to them the source from which such contributions should be made.

It is my conclusion that the provisions of the will and the defendants' acceptance of benefits thereunder impose upon them the obligation to comply with the eleventh paragraph of the will in the manner and to the extent therein provided, while Sanford is at college studying medicine.

Judgment accordingly.