Zimmerman et al., Appellants, *v.* Holiday Inns of America, Inc. et al., Appellants.

Argued November 20, 1969.   Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

530

reargument
refused July 2, 1970.

Harold R. Schmidt, with him Thomas E. Boettger, and Rose, Schmidt and Dixon, for plaintiffs.

James L. Kurtz, with him William H. Webb, William H. Logsdon, and Webb, Burden, Robinson & Webb, and Mason, Fenwick & Lawrence, for defendants.

OPINION BY MR. JUSTICE O'BRIEN, May 28, 1970:

This is an action in equity wherein the plaintiffs seek to enjoin defendants from alleged unfair competition by their use of the name "Holiday Inn" in rendering motel, hotel and restaurant services within a geographical area of Pennsylvania. It also involves a counterclaim wherein the defendants petition to restrain the plaintiffs from alleged unfair competition through plaintiffs' use of "Holiday Inn" as a dominant feature of the name "Holiday Inn Town," one of the plaintiffs' three motels.

The action was filed on July 31, 1963. In the complaint the plaintiffs (hereinafter called "Zimmerman" because Eugene W. Zimmerman is the real party in interest, as he controls all of the identified plaintiffs) originally asked that defendants be enjoined from using the mark "Holiday Inn" within a one hundred mile radius of Harrisburg and a corridor above and below

the Pennsylvania Turnpike from the Ohio State line to the New Jersey State line. Further, Zimmerman contended that defendants willfully and deliberately planned and conspired to divert business away from him and to weaken and destroy whatever rights he had in the name "Holiday." Zimmerman alleged that this conspiracy and plan used an interlocking reservation and advertising system.

Zimmerman's claims were denied by the defendants. The defendants alleged that Zimmerman was not entitled to relief because he was guilty of unclean hands and unfair competition. Defendants also counterclaimed, seeking an injunction against Zimmerman's use of the words "Holiday Inn" in his "Holiday Inn Town" motel.

After a thirty-one day trial, concluded on February 18, 1965, over seventy witnesses and six hundred exhibits, the chancellor rendered his adjudication on May 9, 1968. The chancellor found that Zimmerman had established a secondary meaning to the name "Holiday" in the immediate area of Harrisburg, which area he did not define. The chancellor dismissed defendants' counterclaim, finding that Zimmerman's use of the name "Holiday Inn Town" since 1960 was not done deliberately to pass off his motel as one of those of defendants.

Exceptions were argued to the court en banc on June 27, 1968, and an amended adjudication was rendered on February 24, 1969. The final decree was issued on February 24, 1969, and it enjoined the defendants from encroaching upon Zimmerman's market area, which was found to be a twenty-two mile radius from the center of Harrisburg. Zimmerman and the defendants appealed.

As between Zimmerman and the defendants, he was the first user of the word "Holiday" for a motor hotel in the Commonwealth of Pennsylvania. Zimmerman decided in August, 1952, to use the name "Holiday" at

his fifty-five unit motel at the Gettysburg Pike Interchange of the Pennsylvania Turnpike, which opened in 1953. Between July 8, 1953, and September 16, 1954, an additional thirty-five units were built, making the "Holiday" into ninety units. Zimmerman also owned and operated a fifty-unit motel at the East Harrisburg Interchange of the Turnpike. Originally called "Motel Harrisburg," since 1957 this motel has been designated as "Holiday East" and the motel at the Gettysburg Interchange has been identified as "Holiday West." In 1960 Zimmerman built an additional motel in downtown Harrisburg, midway between Holiday East and Holiday West, which was named "Holiday Inn Town."

The chairman of the defendant Holiday Inns of America, Inc., Mr. Kemmons Wilson, began his first motel in July of 1952, when he opened a Holiday Inn in Memphis, Tennessee. His first motel attracted a good deal of attention and was an immediate success. It became apparent to Mr. Wilson that he himself did not have sufficient financial resources to carry out his plans for a national system of motels. Therefore, he contacted Wallace E. Johnson, now president of Holiday Inns of America, Inc., who at that time was a well-known homebuilder in the Memphis area. Mr. Wilson succeeded in convincing Mr. Johnson to join with him in his plan to create a national system of motels.

In March of 1953, Messrs. Johnson and Wilson wrote letters to various homebuilders around the country and asked them to come to Memphis, Tennessee, for a conference regarding their plan to create a national system of franchise motels. This conference and the concept of a national system of motels gained significance and national notoriety. Articles relating to this conference appeared in publications having national distribution such as *"Hotel Management," "Business*

Week," "St. Louis Post Dispatch," "Wall Street Journal," and Barron's."

This meeting of homebuilders was in March, 1953, and was the beginning of the national system of "Holiday Inn" motels. At this meeting franchises were granted for areas that covered practically the entire United States.

In the spring of 1954, Zimmerman, while on a trip to Memphis, was informed that a motel under the name of "Holiday" existed there as part of a chain that intended to expand. Immediately upon return to Harrisburg, Zimmerman, in an effort to protect the name, on advice of counsel, formed various corporations, using the key word "Holiday."

Both Zimmerman and the defendant Holiday Inn chain have grown from these early modest beginnings. Zimmerman's motel at the Gettysburg Interchange, now known as "Holiday Motor Hotel West," had expanded by 1964 to three hundred air-conditioned rooms, with television and telephone. It also has a restaurant, gas station, three-hole golf course, large ballroom, fully equipped with a revolving stage for presentations and convention facilities, olympic-size swimming pool and recreation room.

Zimmerman's motel at the Harrisburg East Interchange, now known as "Holiday Motor Hotel East," had expanded by 1964 to one hundred fifty air-conditioned rooms, a swimming pool, a restaurant, television and telephone in every room, and banquet and many other facilities. Zimmerman's Holiday Inn Town has four hundred fifty rooms.

During this same period, the defendants' dreams of a national chain of motels had become a reality. By 1964 the chain had grown to five hundred twenty-five members, each with the same advertising configuration (the words "Holiday Inn" written in script), known as the "Great Sign," and each with television, air con-

ditioning, swimming pool, 24-hour telephone service, uniform operating procedures and an interlinking advance reservation and referral system.

Inevitably, these two motel empires had to clash. On June 30, 1958, the defendant Holiday Inns of America, Inc., reached Pennsylvania, where a licensee, B & C Motel Corporation opened a motel known as "Holiday Inn" near Allentown, Pennsylvania, about eighty miles from Zimmerman's "Holiday East" and about ninety miles from his "Holiday West."

On July 26, 1958, Zimmerman brought an action to restrain alleged unfair competition by the Holiday Inn chain. Judge HENNINGER of the Court of Common Pleas of Lehigh County granted the defendants' motion for compulsory nonsuit. Ultimately the case came before us and we found that Zimmerman had not then proved the requisite secondary meaning of the Holiday name in the Allentown area. *Zimmerman v. B & C Motel Corporation*, 401 Pa. 278, 163 A. 2d 884 (1960). The opinion by Justice BOK ended with this paragraph: "We approve the lower court's leaving the case without prejudice, in case the parties extend their facilities in this rapidly expanding industry."

Since the *B & C Motel* case, the defendant Holiday Inn system has expanded to the point where, as of 1965, when this case came to trial, there were fifteen "Holiday Inns" in Pennsylvania. Thus, the fact situation is quite different from what it was the last time a dispute between these same parties came before this court.

However, the law is the same. In order to prove that he is entitled to relief from the courts in the form of an injunction to protect his use of the name "Holiday," from a competing use by the defendants, Zimmerman must prove that he has a legal right to exclusive use of the word "Holiday," that the defendant Holiday Inn is using a name or mark confusingly similar to

Zimmerman's name or mark, and that defendants' use of the name is likely to cause confusion in Zimmerman's competitive area.

Although Zimmerman sought to enjoin the Holiday Inn system from operations all along the Pennsylvania Turnpike and in an area within one hundred miles of Harrisburg, the court found that Zimmerman was entitled to protection only in an area defined as twenty-two miles from the center of Harrisburg. In argument, counsel for Zimmerman took the position that this area was too limited in size and scope to afford him the full measure of relief to which he was entitled.

The Holiday Inn system contended that the court erred in finding that Zimmerman was entitled to any relief because, they contended, he had failed to prove he was entitled to exclusive use of the name "Holiday" and he was not entitled to relief in any case because he had been guilty of unclean hands through the use of the name "Holiday Inn Town" for his third motel. Moreover, they urged that if we found Zimmerman was entitled to some protection, we should find that his area does not extend a distance of more than fifteen miles from the center of Harrisburg. It appears that a twenty-two mile radius would include a proposed Holiday Inn in York, Pennsylvania. However, the record supports a finding that Zimmerman established a secondary meaning in the greater Harrisburg area, including York.

In order to have an exclusive right to the use of a common word like "Holiday," Zimmerman must prove that the name has taken a secondary meaning.

The term "secondary meaning" encompasses the situation where people in the trade or purchasing public come to think of a word or name as standing for the business of a particular owner, here, "Holiday" standing for the motel business of Zimmerman. *Zimmerman v. B & C Motel Corporation,* supra, *KoolVent Metal*

*Awning Corp. v. Price*, 368 Pa. 528, 84 A. 2d 296 (1951). The chancellor found that although Zimmerman had failed to prove that he had acquired a secondary meaning in "Holiday" throughout the state of Pennsylvania, he had established a secondary meaning in the word "Holiday" in the greater Harrisburg area.

The record amply supports this finding. Greater Harrisburg is the only area in which Zimmerman has rendered motel and restaurant services under the name "Holiday." Zimmerman has done extensive advertising of his Holiday motels, but most of this advertising was confined to the Harrisburg area. The witnesses, whose testimony carried the most weight with the chancellor in establishing that Zimmerman had achieved a secondary meaning for his use of the word "Holiday," were people whose business brought them freqeuntly to Harrisburg, such as George Bloom, former Secretary of the Commonwealth of Pennsylvania and now Chairman of the Public Utility Commission, and George M. Leader, former Governor of the State, both of whom testified that the generally accepted meaning of the word "Holiday" when used in relation to a motel or motor hotel among all people in government in Harrisburg with whom they had come in contact was one of Zimmerman's motels.

However, the chancellor did not find the testimony persuasive on the question of establishing a secondary meaning for Zimmerman's use of Holiday anywhere in Pennsylvania outside of Harrisburg. There was ample evidence in this case concerning extensive use of the word "Holiday" for motels and restaurants in Pennsylvania which were not connected with either Zimmerman or the Holiday Inn System. In addition, although many of Zimmerman's witnesses testified that they had seen "Holiday Inns" operated by the defendant system and they testified that they believed that the motels of both plaintiffs and defendants were all part of the same sys-

tem, there was often no indication that Zimmerman's use of the name "Holiday" had acquired a secondary meaning in the minds of these witnesses, before these witnesses had seen or heard of the motels of the defendant system. Moreover, the witnesses chosen by Zimmerman's counsel to give testimony were not chosen at random or by any scientific method. Only thirty witnesses were brought in, seven from the Philadelphia area, twenty-two from the Pittsburgh area and one from Harrisburg. There was no indication that they were representative of the estimated 5 to 8 million people who live along the Pennsylvania Turnpike. There was no indication of the total number of people who use the Pennsylvania Turnpike, and the geographic source for these travelers. Surely they do not all stem from within Pennsylvania. In view of the extensive advertising done by the defendant system, many of these travelers have probably heard of the defendant system's motels first rather than Zimmerman's motels in Harrisburg. See for a discussion of surveys, *American Luggage Works v. United States Trunk Co.*, 158 F. Supp. 50 (D. Mass. 1957); *Humble Oil & Refining Co. v. Standard Oil Co. (Kentucky)*, 229 F. Supp. 586 (S.D. Miss. 1964).

We agree with the chancellor. Only within a twenty-two mile radius of Harrisburg has Zimmerman's use of the name "Holiday" acquired a secondary meaning.

The defendant Holiday Inn System also contends that there is no confusion because their Holiday Inn sign does not conflict with Zimmerman's Holiday sign. The chancellor found that there was conflict because Holiday was the key word. We agree with the chancellor. Many witnesses testified that they did not remember whether the word "Holiday" was followed by the word "Inn" on either Zimmerman's or the defendants' motel. There were many instances of confusion in marking and in registration of guests. Moreover,

538

various advertising done by the defendant Holiday Inns of America System clearly indicated that they, too, considered "Holiday" the key word.[1]

Zimmerman's argument that the area described by the court order, a twenty-two mile radius from the center of Harrisburg, does not mark the full scope of his motel trading area is not relevant. We agree that a motel's trading area, in these days of high speed traffic, covers a wide range. However, Zimmerman is entitled to protection only where his use of the name has acquired secondary meaning, not in all parts of his trading area.

The case of *Travelodge Corporation v. Siragusa*, 228 F. Supp. 238 (N.D. Ala. 1964) and the case of *Quality Courts United v. Quality Courts*, 140 F. Supp. 341 (M.D. Pa. 1956), both cited in the brief for Zimmerman, can be distinguished from the instant case.

In both of those cases the plaintiffs had established secondary meaning for their names throughout the area where defendant was operating its motel. Here, such secondary meaning was confined to the Harrisburg area.

We find no merit to defendant Holiday Inns of America's contention that Zimmerman's claim to relief is barred by his alleged act of unclean hands in using Holiday Inn Town for his third motel. The record supports the chancellor's finding that Zimmerman's use of the name "Holiday Inn Town" since 1960 was not done deliberately to pass off his motel as one of defendants'.

Zimmerman's use of the words "Holiday Inn" for the Holiday Inn Town motor hotel is but an extension of the name Holiday which we have already identified as the key word in the name Holiday Inn.

---

1 For example, billboards advertising "Go Gulf, Go Holiday," an advertising symbol named "Johnny Holiday," and a national magazine campaign featuring the Holiday Inns and the Oldsmobile Holiday automobile.

Moreover, there was no attempt to copy the "Holiday Inn" mark. The advertising of Zimmerman's Holiday Inn Town is quite different from the script lettering and "Great Sign" of the Holiday Inns of defendants' system. In no sense can the doctrine of unclean hands be applicable. Therefore, we agree with the chancellor. Zimmerman is entitled to relief and the counterclaim of the defendant system should be dismissed.

One more issue remains. The wording of the final decree prohibits the Holiday Inn system from "encroaching" on the area defined within a twenty-two mile radius of Harrisburg. Zimmerman contends that the word "encroaching" should include advertising as well as actual operation of motels. We disagree. As we have already said, Zimmerman is only entitled to protection within the zone of a circle with a radius of twenty-two miles of Harrisburg. If we barred the Holiday Inn System from advertising within that twenty-two mile radius, we would, in effect, be enlarging Zimmerman's zone of protection by diminishing the effective market area of the Holiday Inns which are outside that zone. This we will not do.

Decree affirmed. Each party to bear own costs.

Mr. Justice COHEN dissents.