369 A.2d 296

QUALITY WEAVING COMPANY

v.

Robert E. REGAN, Individually and doing business
as Quality Label Company, Appellant,

Superior Court of Pennsylvania.

Argued Sept. 13, 1976.

Decided Nov. 22, 1976.

67

Victor J. Roberts, Norristown, with him High, Swartz, Roberts & Seidel, Norristown, for appellant.

Zachary T. Wobensmith, II, Philadelphia, for appellee.

Before WATKINS, P. J., and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

JACOBS, Judge:

Plaintiff-appellee, Quality Weaving Company, filed an amended complaint in equity alleging infringement on its

established trade name and seeking, *inter alia,* injunctive relief against appellant. A hearing on this complaint was held on May 16, 1975. On August 8, 1975 the chancellor issued a decree nisi, enjoining appellant from using the trade name Quality Label Company or the word "Quality" as or in a trade name in the label business in the Philadelphia and suburban Philadelphia area. Appellant's exceptions to certain findings of fact, to conclusions of law, and to the decree nisi were argued before the court en banc on February 17, 1976. On February 20, 1976 the court entered an order amending one of its findings of fact but otherwise dismissing appellant's exceptions. This appeal followed from the final decree thus entered. For the reasons hereinafter set forth, we conclude that the injunction must be dissolved.

The chancellor's findings of fact, insofar as they are relevant to this appeal, are summarized as follows: Appellee, Quality Weaving Company, is a manufacturer and distributor of labels, manufacturing woven and printed labels for a wide variety of items. In 1961 appellee undertook the formation of a separate corporation called Quality Industries, Inc., for the sole purpose of manufacturing and marketing woven bookmarks. Appellee solicits business by means of advertisements in trade journals and in the yellow pages of the Philadelphia and Manhattan telephone directories. Its woven label sales have ranged from $552,000 in 1962 and steadily increased to $1,274,000 in 1974. Appellee has been in the printed label business since 1967, with its sales of printed labels rising to a total of $305,000 in 1974. Since 1971 or 1972 certain of its labels have been printed on man-made fibers having properties like paper.

Appellant, Quality Label Company, engages in the manufacture of pressure sensitive labels printed on paper or foil. It registered the fictitious name Quality Label Company in 1972, unaware of the existence of Quali-

ty Weaving Company. Appellant also advertises in the yellow pages of the telephone directory.

Appellee does not use the name Quality Label Company on any of its stationery, has not filed a fictitious name registration for the name Quality Label Company, and has not advertised as Quality Label Company. However, from 1966 to 1974 appellee received correspondence addressing it as Quality Label Company, or Quality, or other names containing the word "quality." In 1974, two checks mailed to appellee by a customer were misrouted to appellant's prior location before reaching appellee. Appellee has also been questioned as to whether appellant was selling for or was owned by, part of, or an office of appellee.

There was no evidence presented which would indicate that appellant adopted the name Quality Label Company with an intent to deceive the purchasing public. Rather, a realistic appraisal of the reasons existing for the choice of its name reveals simply that appellant wanted to use it to designate its label business. Nevertheless, the chancellor concluded that appellee's trade name had acquired a secondary meaning in the label industry as indicating appellee's business and that the name assumed by appellant was so similar as to "pose a substantial threat to public distinction between the parties' businesses." He further concluded that nothing short of the elimination of the word "quality" from appellant's corporate name would avoid the deception and confusion that he considered likely to occur. Accordingly, the chancellor enjoined further use of appellant's business name, as well as the use of any name containing the word "quality." "It is our duty to determine whether or not the evidence supports the findings of the court below and whether or not its legal conclusions are sound." *Consolidated Home Specialties Company v. Plotkin,* 358 Pa. 14, 19, 55 A.2d 404, 407 (1947).

The general rule is that a corporation has a right to its name and another business enterprise will be restrained from its use. *Consolidated Home Specialties Company v. Plotkin,* supra. Moreover, if a protectible trade name is established within a relevant market, our courts will prohibit another from using a name confusingly similar thereto. *Consolidated Home Specialties Company v. Plotkin,* supra. *See also, Zimmerman v. Holiday Inns of America, Inc.,* 438 Pa. 528, 266 A.2d 87 (1970), *cert. denied,* 400 U.S. 992, 91 S.Ct. 456, 27 L.Ed. 2d 440 (1971); *Dutch Pantry, Inc. v. Shaffer,* 396 Pa. 102, 151 A.2d 621 (1959); *Kool Vent Metal Awning Corporation of America v. Price,* 368 Pa. 528, 84 A.2d 296 (1951); *Quaker State Oil Refining Company v. Steinberg,* 325 Pa. 273, 189 A. 473 (1937). Pennsylvania courts have adopted the criteria set forth in the Restatement of Torts § 729 (1938) as a guide in determining whether a particular designation is confusingly similar to another's trade name:

"(a) the degree of similarity between the designation and the trade-mark or trade name in

"(i) appearance;

"(ii) pronunciation of the words used;

"(iii) verbal translation of the pictures or designs involved;

"(iv) suggestion;

"(b) the intent of the actor in adopting the designation;

"(c) the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other;

"(d) the degree of care likely to be exercised by the purchaser."

Appellee offered no evidence to the effect that any customer had dealt with appellant thinking he was purchasing from appellee. However, it was not necessary that

appellee prove that any customer was actually deceived by the name assumed by appellant; the determining factor is whether there is a reasonable likelihood that the average purchaser will be deceived. *Peters v. Machikas,* 378 Pa. 52, 105 A.2d 708 (1954); *Thomson-Porcelite Co. v. Harad,* 356 Pa. 121, 51 A.2d 605 (1947). But our cases make it clear that the mere possibility of confusion is not enough.

A substantial part of the business done by appellee admittedly lies somewhat outside the limits of the field of activities into which appellant entered. However, within those limits the two companies are competitors. Appellant asserts that appellee's trade name is Quality Weaving Company while its trade name is Quality Label Company and that there is no similarity between the two names. Appellee contends that "Quality" is the dominant portion of the names used by the two companies and that " 'Quality' has been and is the abbreviation for the appellee's trade name and it has been associated with appellee in the minds of the public." Appellee's Brief at 4. One of appellee's witnesses testified that a number of its competitors have incorporated "Label Company" as part of their trade names. Yet allegations of trade name infringement have been levied against appellant alone. We are not convinced that appellant's designation is similar to appellee's except insofar as they both use the word "quality." Any person exercising ordinary care should be able to distinguish the trade names utilized by the parties. After reviewing the record and the parties' briefs it is apparent to us that appellee's concern is not so much with a claimed similarity of the trade names Quality Weaving Company and Quality Label Company, but rather with appellant's use of "quality" in the context of the label business wherein the two companies compete.

In order to be entitled to injunctive relief to prevent the use of the word "quality" by appellant, appellee must

establish that it has a legal right to the exclusive use of the word. *Zimmerman v. Holiday Inns of America, Inc.,* supra; *Zimmerman v. B. & C. Motel Corporation,* 401 Pa. 278, 163 A.2d 884 (1960). The leading Pennsylvania case dealing with this subject is *Kool Vent Metal Awning Corporation of America v. Price,* supra, wherein our Supreme Court stated:

> "The law in this class of cases is well-established; its application to different facts and circumstances is sometimes difficult. *Descriptive, geographical and generic words, as well as words of common or general usage* belong to the public and *are not capable of exclusive appropriation by* anyone. This general principle is subject to the limitation or exception that if a trade-name or trade-mark or other word or words have acquired, *in the trade and in the minds of the purchasing public,* a special or so-called secondary meaning, i. e., have come to mean that the article is the product of a certain manufacturer or of a particular individual or corporation, such trade-name or trade-mark or word or words will be protected against infringement: (citations omitted)." *Id.,* 368 Pa. at 532–33, 84 A.2d at 298.

*See, Drug Fair-Community Drug Co., Inc. v. Drug Fair, Inc.,* 453 Pa. 454, 309 A.2d 363 (1973); *Zimmerman v. Holiday Inns of America, Inc.,* supra; *Zimmerman v. B. & C. Motel Corporation,* supra.

"Quality" is clearly a descriptive word. Lacking secondary meaning the word is incapable of exclusive appropriation by appellee in connection with the label business. The chancellor recognized "that a mundane word like quality might ordinarily be regarded as belonging to the public," but concluded that "quality" had acquired an established secondary meaning in the label industry within the Philadelphia and suburban Philadelphia area. It is with this conclusion that we must disagree.

"The term 'secondary meaning' encompasses the situation where people in the trade or purchasing public come to think of a word or name as standing for the business of a particular owner . . . ." *Zimmerman v. Holiday Inns of America, Inc.*, supra, 438 Pa. at 535, 266 A. 2d at 90. To acquire a secondary meaning a business name or word must acquire a special significance to the purchasing public. In the instant case we therefore look to whether "quality" has come to be associated in the minds of prospective customers with a business owned and operated by appellee.

Quality Label Company entered the printed label manufacturing business in 1972. We thus must look for the establishment of a secondary meaning prior to that date. "The acquisition of a secondary meaning following this time could not justly divest the defendants of their rights." *Quaker State Oil Refining Company v. Steinberg*, supra, 325 Pa. at 280, 189 A. at 476.

■ No clear test has emerged in Pennsylvania as a satisfactory method of establishing the existence of a secondary meaning. It is well-settled, however, that secondary meaning cannot be assumed and that the burden of proof is upon the party claiming its existence. *Miscellaneous, Inc. v. Klein's Fashions, Inc.*, 452 Pa. 62, 305 A.2d 22 (1973); *Zimmerman v. Holiday Inns of America, Inc.*, supra. Appellee offered the following evidence in support of its claim for injunctive relief:

(1) Testimony by its officers as to the extent of Quality Weaving Company's advertising and gross receipts from the label business.

(2) Testimony by its officers that appellee had come to be known by its customers as Quality or Quality Label Company or other names using the word "Quality."

(3) Testimony by its officers that appellee had been questioned as to whether appellant's business was part of appellee's business.

■ Correspondence received from 1966 to 1974 that had been misaddressed or misdirected.

■ The law is clear that advertising in and of itself will not establish the requisite secondary meaning. *Miscellaneous, Inc. v. Klein's Fashions, Inc.*, supra; *Quaker State Oil Refining Company v. Steinberg*, supra. While we can assume that appellee's display advertising in the Philadelphia telephone directory yellow pages was directed toward creating an identification by the public with its corporate name, there was no evidence that this advertising had led purchasers to associate the word "quality" with appellee's label business. Appellee's officers did testify that appellee was known in the trade as "quality", but we do not find this testimony persuasive. These attestations from two people closely associated with appellee's business cannot be considered as reflecting the views of the entire purchasing public.

■ There no doubt was confusion on the part of some of appellee's customers. This confusion is evidenced by the misaddressed and misdirected correspondence, and by testimony of customer inquiries as to a possible connection between appellee's and appellant's businesses. Pennsylvania courts recognize, however, that incidental customer confusion does not establish a secondary meaning in one's use of a word or business name. *Miscellaneous, Inc. v. Klein's Fashions, Inc.*, supra. The fact that several customers in the past inadvertently or mistakenly addressed correspondence intended for appellee does not convince us that "quality" has the generally accepted meaning of appellee's business.

■ We find the evidence in the instant case, taken as a whole, insufficient to establish that more than a mere sampling of the consuming public associates the word "quality" with a business owned and operated by appellee. Having failed to sustain its burden of proving

the requisite secondary meaning, appellee is not entitled to appropriate "quality" to its exclusive use in the context of the label business.

Decree vacated.

PRICE and VAN der VOORT, JJ., dissent.