# Susquehanna Nursing Services, Inc. v. Susquehanna Center for Nursing and Rehabilitation

*Donn L. Snyder,* for plaintiff.
*Bruce F. Bratton,* for defendant.

DOWLING, *J.,* April 18, 1984 — The central landmark of our scenic valley is the broad and beautiful Susquehanna River, which originating above Otsego Lake in New York, flows southeastwardly into the Chesapeake Bay at Havre de Grace, Maryland, 400 miles from its source. This, the longest non-navigable river on the American continent, was discovered by Captain John Smith in 1608. According to his journal, Smith sailed up the Susquehanna until the first rapids were reached (thought to be near Conestoga Creek) before he learned the name of the river. At the falls, he met a party of indians from whom he heard the word "Sasquesahanough". The word "Sasquesahanough" as applied to these people by their neighbors signified quite expressly "the people of the Falls River". Through time, the

word was gradually changed to Sasquehannock, and finally to Susquehanna.

And it is the name of these rolling, gleaming waters coursing through dale and valley, bordered by towns and cities which forms the basis of our present dispute; an action in equity to enjoin defendants from using the name "Susquehanna".

Plaintiff alleges it has appropriated the name in conjunction with health care services, and that defendants' use of it in rendering nursing services is unfair competition which will weaken and destroy plaintiff's right in the name.

As an action for injunctive relief, the complaint seeks an extraordinary remedy that should only be granted with extreme caution. Pye v. Pa. Insurance Department, 29 Pa. Commw. 545, 372 A.2d 33, aff'd 479 Pa. 146, 387 A.2d 877 (1977). The power of the Court to grant such relief is to be exercised only where the reason and necessity for such relief are clearly established. School District of City of Pittsburgh v. Zebra, 15 Pa. Commw. 203, 325 A.2d 330 (1974). In this, as in all matters brought to the equity side of the court, the court is vested with the power to act in its sound discretion after considering all of the circumstances presented and the effects on all parties to the dispute.

## FINDINGS OF FACT

(1) Plaintiff, Susquehanna Nursing Services, Inc., is a Pennsylvania corporation existing since October of 1978 and provides home health care services to the aged, ill, or injured persons within the Harrisburg area. It employs twelve to 15 registered nurses and approximately four licensed practical nurses who visit plaintiff's clients at their homes. It has never operated nor applied for approvals necessary for operating an in-patient nursing facility.

(2) Defendant, Susquehanna Center for Nursing and Rehabilitation, was first begun by defendant, Frank M. Caswell, Jr. in 1979, when he proposed the building of an in-patient nursing and convalescent center. All necessary approvals were obtained, and a multi-story, 180-bed, in-patient, facility is substantially completed at 1909 North Front Street, Harrisburg, on the banks of the Susquehanna River. It is scheduled for opening in the summer of 1984.

(3) The decision of a patient to undergo in-patient care or remain at home with home health assistance is normally made in consultation with physicians and/or other health care professionals whose training renders almost non-existent any opportunity for confusion between the services rendered by plaintiff and defendants.

(4) Plaintiffs or clients of both plaintiff and defendant frequently require a physician's certification as to the need of the particular level or type of service or care provided in order to obtain Medicare, Medicaid or other third party payor reimbursement.

(5) In the Harrisburg area, there are innumerable businesses using the word "Susquehanna" in their business or trade names or marks, and there exists at least three health care entities using the word Susquehanna in their names. These include the Susquehanna Lutheran Village (another nursing home/convalescent facility), Susquehanna Orthopedic Associates, Ltd., (a physician's office), and Susquehanna Valley Center (an alcohol related problems center at the Harrisburg Hospital).

(6) Defendant, Susquehanna Center for Nursing Rehabilitation, has expended considerable time and funds in obtaining signs, marketing limited partnership interests, purchasing stationery and brochures, and in gaining governmental approvals for the

project under the name Susquehanna Center For Nursing and Rehabilitation.

## DISCUSSION

In Zimerman v. Holiday Inns of America, Inc., 438 Pa. 528, 266 A.2d 87 (1970), the law in Pennsylvania regarding the rights of those who claim unfair competition by the use of a similar name by another is clearly spelled out.

"In order to prove that he is entitled to relief from the courts in the form of an injunction to protect his use of the name 'Holiday,' from a competing use by the defendants, Zimmerman must prove (1) that he has a legal right to the exclusive use of the word 'Holiday', (2) that the defendant . . . is using a name or mark confusingly similar to Zimmerman's name or mark, and (3) that defendant's use of the name is likely to cause confusion in Zimmerman's competitive area." (numbering added) Id. at 530, 266 A.2d at 90.

The first test requires plaintiff to show that it has legal right to the exclusive use of the word "Susquehanna". The general rule to be applied is that:

"Descriptive, geographical and generic words, as well as words of common or general usage belong to the public and are not capable of exclusive appropriation by anyone. This general principle is subject to the limitation or exception that if a trade name or trade-mark or other word or words have acquired, in the trade and in the minds of the purchasing public, a special or secondary meaning, i.e., have come to mean that the article is the product of a certain manufacturer or of a particular individual or corporation, such trade name or trade-mark or word or words will be protected against infringement." Kool Vent Metal Awning Corp. v. Price, 368 Pa. 528, 532-

533, 84 A.2d 296 (1951), cited in Drug Fair-Community Drug Co., Inc. v. Drug Fair, Inc., 453 Pa. 454, 309 A.2d 363 (1973).

Plaintiff has presented testimony that there is some confusion at the present time between the name Susquehanna Nursing and Susquehanna Center. Specifically, there is evidence that plaintiff has received telephone calls from construction contractors, employees of the postal service, and potential employees mistakenly seeking contact with the defendant. These calls do not appear to be of any great number, but more importantly they represent a temporary situation which will cease once the defendant's center is in operation. Moreover, even if "there is no doubt confusion between the two establishments, confusion, in and of itself, does not establish that one party's use of a name has given it a secondary meaning." Miscellaneous, Inc. v. Klein's Fashions, Inc., 452 Pa. 62, 305 A.2d 22 (1973). Mere advertising is insufficient, too, to establish a trade-mark or name's secondary meaning. Quaker State O.R. Co. v. Steinberg, 325 Pa. 273, 189 A. 473 (1937). It must also be noted that the existence of a secondary meaning for ordinary words connot be assumed. The burden of proof is upon the party claiming that such a meaning exists. Quality Weaving Co. v. Regan, 245 Pa.Super. 66, 369 A.2d 296 (1976). Because the court is to exercise such extreme caution before granting injunctive relief, the burden of proof requires more than just showing that a certain sampling of the consuming public associates a certain word with a certain owner or entity. Id.

"Secondary meaning" is usually established through extensive advertising which creates in the mind of the consumers an association between different products bearing the same mark which sug-

gests to consumers that they come from the same source. Scott Paper Co. v. Scott's Liquid Gold, Inc., 589 F.2d 1225 (3d Cir. 1978). Other factors that may be considered include: (1) the length and manner of use of the product or service, (2) the amount of sales of the product or service, (3) the product's or service's relative popularity as evidenced by empirical market studies, and (4) whether plaintiff alone has used the otherwise ordinary word compromising the name or mark or others have also used the term in a descriptive sense. Clarke v. K-Mart, 473 F.Supp. 1299 (W.D.Pa. 1979). See also, American Diabetes Ass'n. v. National Diabetes Ass'n., 533 F.Supp. 16 (E.D.Pa. 1981), aff'd 681 F.2d 804 (1982).

Thus, in the case of the American Diabetes Ass'n., for example, the court noted as evidence in favor of the plaintiff (during its consideration of the propriety of a preliminary injunction) that plaintiff would be able to show over forty years' worth of use of the name and extensive television, radio and magazine advertising. Other courts have looked to the amount of money or time devoted to the advertising, research and development of the name for which protection is sought and have been presented with extensive marketing surveys to support the allegation that a word or mark has developed a secondary meaning. Pgh. Brewing Co. v. Duquesne Brewing Co., 111 P.L.J. 351 (1963).

Plaintiff has no budget item for promotional or advertising expenses and has not engaged in any mass-media advertising.

There are two other requirements which are closely related: the use by the defendant must be confusingly similar to plaintiff's and also likely to cause a problem in the plaintiff's competitive area.

The name Susquehanna is, of course, descriptive of a location. It should be noted that defendant's building is located on the banks of the Susquehanna River, while defendant's location is some four miles inland. In any event, the fact that the names are similar does not necessarily mean they are confusingly similar. There was also evidence presented that defendant's name is being used colloquially as Susquehanna Center without the word "nursing".

The determinate factor, however, lies in the nature of the services provided by the two parties. Plaintiff's is in home care, and defendant's is institutional. The decision as to which service to seek is a considered one, usually as the result of consultation with professionals. This is not a case of competing hamburger stands or motels along an interstate attempting to attract unwitting passersby with deceptively similar neon invitations to dine, nor of motels luring the weary traveller to rest by use of billboard ads on busy highways. We think the evidence demonstrates rather clearly that these parties are engaged in offering services which are more complimentary than competitive. The use of the beautiful name, Susquehanna, associated as it is with our lovely and peaceful flowing river, should inure to the benefit of all.

Accordingly, we enter the following

## DECREE NISI

And now, April 18, 1984, plaintiff's complaint is dismissed.

If no exceptions are filed within ten days, the decree nisi shall be entered by the Prothonotary of Dauphin County of praecipe as the final decree.

## FINAL ORDER

The issues raised in plaintiff's Exceptions have been discussed by the Court in its Adjudication of

April 18, 1984, and for the reasons set forth therein are dismissed.

Accordingly, the plaintiff's Complaint is dismissed.