The PENNSYLVANIA STATE
UNIVERSITY, Appellant,

v.

UNIVERSITY ORTHOPEDICS, LTD.,
Kenneth Cherry, M.D., Douglas Roeshot,
M.D., Jay S. Cox, M.D., Stanley J. Yoder,
M.D., Thomas Ellis, M.D., Edwin J. Ro-
gusky, M.D., Henrik Mike–Mayer, M.D.,
Gregory Fulchiero, M.D., Appellees.

Superior Court of Pennsylvania.

Argued Sept. 25, 1997.

Filed Jan. 14, 1998.

Andrew H. Cline, Harrisburg, for appellant.

Charles W. Rubendall, Harrisburg, for appellees.

Before CAVANAUGH, TAMILIA and HUDOCK, JJ.

CAVANAUGH, Judge.

This is an appeal from an order which granted Appellee University Orthopedics' ("UO") motion for summary judgment and dismissed the action filed by Appellant Pennsylvania State University ("PSU"). We reverse and remand.

UO is a professional medical corporation located in State College, Pennsylvania, which provides orthopedic and sports medicine services. PSU is a state-supported institution of higher education based in State College, Pennsylvania, which, through its College of Medicine, operates a network of health care facilities throughout the State College and central Pennsylvania area. Through the Penn State Center for Sports Medicine located in State College, PSU offers orthopedic and sports medicine services to the general public.

The dispute in this case arose over UO's use of the word "university" in conjunction with its medical practice. PSU's health care services are grouped under the name "University Health Services" and it employs the word "university" in connection with many of the medical services it offers. PSU alleged the use of "university" by UO was designed to cause consumers of medical services to believe that UO was affiliated with PSU. UO has used "university" not only as part of its logo, but in a variety of promotional materials and advertisements.

In 1992, in order to minimize consumer confusion, PSU and UO executed a "Release Agreement." In exchange for PSU agreeing not to sue to enforce its common law rights, UO agreed to include a disclaimer that it is not affiliated with PSU in all its advertisements and literature. Despite this agreement, PSU alleged that UO subsequently failed to include the required disclaimer on a number of its advertisements. It further alleged that UO's use of "university" continued to cause confusion among medical service consumers.

On December 9, 1994 PSU filed an equity action against UO seeking injunctive relief and damages. PSU's complaint contained four counts: count 1—breach of contract; count 2—unfair competition by infringement of common law rights; count 3—violation of Pennsylvania's anti-dilution statute; and count 4—violation of § 43(a) of the Trademark Act of 1946 ("Lanham Act"). After the pleadings closed, UO filed a motion for summary judgment and PSU filed a cross-motion for partial summary judgment on its breach of contract claim. The trial court granted UO's motion as to all four counts and dismissed PSU's complaint.

With respect to PSU's claim of unfair competition and trademark infringement, the court found that PSU failed to raise a "pass-

ing off" theory of liability.[1] As such, it concluded that PSU was required to prove that it had a legal right to the exclusive use of the word "university." The court then found that "university" was a generic term and that UO was entitled to summary judgment on the issues of unfair competition and trademark infringement. The court also concluded that summary judgment was appropriate on the breach of contract claim because the Release Agreement was not enforceable. The court reasoned the agreement was not supported by consideration because PSU's promise not to sue was illusory, as it had no proprietary right to the word "university." Following the entry of summary judgment, PSU filed this appeal.

When reviewing the grant of summary judgment, our scope of review is plenary. *American States v. Maryland Casualty*, 427 Pa.Super. 170, 180, 628 A.2d 880, 885 (1993).

> [A] motion for summary judgment may be granted only if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In passing on a motion for summary judgment, this Court will view the record in the light most favorable to the non-moving party.... Summary judgment is appropriate only in those cases which are free from doubt.

*Dublin by Dublin v. Shuster*, 410 Pa.Super. 1, 5, 598 A.2d 1296, 1298 (1991). "[T]he

grant of summary judgment will only be reversed for an error of law or a clear abuse of discretion." *Carns v. Yingling*, 406 Pa.Super. 279, 282, 594 A.2d 337, 339 (1991) (citations omitted).

We begin with an examination of PSU's claim for relief under federal law— § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[2] PSU argues the court erred in entering summary judgment in favor of UO on this claim on the basis of the trial court's incorrect conclusion that PSU cannot claim an exclusive right to use of the word "university." PSU maintains that even if "university" is a generic term, it has, nonetheless, pled sufficient facts and produced sufficient documentary evidence to show "passing off" and preclude the entry of summary judgment on a § 43(a) claim.[3] We agree.

A claim of unfair competition encompasses trademark infringement, but also includes a broader range of unfair practices, which may generally be described as a misappropriation of the skill, expenditures and labor of another. *Murphy Door Bed Co. v. Interior Sleep Systems*, 874 F.2d 95, 102 (2d Cir.1989).

Federal courts have long held that § 43(a) of the Lanham Act extends protection to unregistered trademarks on the principle that unlicensed use of a designation serving the function of a registered mark constitutes a false designation or representation. A designation may only receive protection, however, if the public recognizes it as identifying the claimant's

---

1. Under a "passing off" theory, a plaintiff alleges the public was confused or deceived into mistakenly purchasing a competitor's product or service in the belief it was the product or service of the plaintiff.

2. State courts have concurrent jurisdiction of claims brought under the Lanham Act. *See* 15 U.S.C. § 1121; *Aquatherm Industries, Inc. v. Florida Power & Light Co.*, 84 F.3d 1388, 1394 (1996).

3. § 43(a) of the Lanham Act provides:
   (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, false

or misleading description of fact, or false or misleading representation of fact, which—
   (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person, or
   (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.
*15 U.S.C. § 1125(a).*

"goods or services and distinguishing them from those of others." 1 J. McCarthy, *Trademarks and Unfair Competition* § 15:1 at 667 (2d ed.1984). Such identification depends, in the first instance, on a designation's level of inherent distinctiveness, and for this purpose, courts have divided designations into four categories: arbitrary (or fanciful) terms, which bear "no logical or suggestive relation to the actual characteristics of the goods;" suggestive terms, which suggest rather than describe the characteristics of the goods; descriptive terms, which describe a characteristic or ingredient of the article to which it refers, and generic terms, which function as the common descriptive name of a product class. *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 374 n. 8 (1st Cir.1980). *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 296 (3d Cir.1986). Arbitrary or suggestive marks are considered inherently distinctive and automatically qualify for trademark protection; while descriptive marks are afforded such protection only where "secondary meaning"—that consumers identify the term with the claimant—is proven. *Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 143 (2d Cir.1997). A generic term may not be appropriated from the public domain for the exclusive use of one party; thus, trademark protection is never afforded generic terms. *Forschner Group, Inc. v. Arrow Trading Co. Inc.*, 30 F.3d 348, 358 (2d Cir.1994).

■■■ Here, the trial court found that "university" was a generic term and PSU does not challenge that determination. After reviewing the record and pertinent legal authority, we agree with the trial court that "university" is a generic term. *See Genesee, supra* (classification of term is fact-bound determination; so long as trial court utilized correct legal standard, court's classification will be upheld unless clearly erroneous).[4] "A generic term is one that refers, or has come to be understood as referring, to the genus [the product category] of which the particular product is a species." *Forschner, supra.* It is a term so commonly descriptive of a product or service that it does not identify the specific source of the product or service. *A.J. Canfield, supra* at 296–98. "University" has been defined as an institution of higher learning providing facilities for teaching and research and authorized to grant academic degrees. *Webster's New Collegiate Dictionary* 1271 (1979); *Commonwealth v. Banks*, 198 Pa. 397, 48 A. 277 (1901). Here, the primary significance of "university" indicates a nature or class—institutions of higher learning—rather than specific origin—PSU. The term fits squarely within the definition of generic: PSU is a species of the broader, general, generic term "university." This conclusion, however, does not end our analysis.

■■■ The mere use of a competitor's generic name will not constitute a § 43(a) unfair competition claim. *Forschner, supra.* Such a claim may lie, however, where a company's use of the competitor's generic name confuses the public into mistakenly purchasing its product in the belief it is the product of the competitor. *Murphy, supra.* The United States Court of Appeals for the D.C. Circuit has stated:

> If the name of one manufacturer's product is generic, a competitor's use of that name, without more, does not give rise to an unfair competition claim under section 43(a) of the Lanham Act. *See Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 939 (7th Cir.1986). Nevertheless, such a claim "might be supportable if consumer confusion or a likelihood of consumer confusion arose from the failure of the defendant to adequately identify itself as the source of the product." *Id.* (citing *Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990, 997 (7th Cir.1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980)); *see also Technical Publishing Co. v. Lebhar–Friedman, Inc.*,

---

4. The trial court applied the correct legal standard in this case—the "primary significance test." Under this test, one seeking to establish a valid trademark must show the primary significance of the term in the minds of the consuming public is not the product but the producer. A term is deemed generic under the test where its principal significance is its indication of the nature or class of an article, rather than an indication of its origin. *Genesee, supra* at 144; *see also A.J. Canfield, supra.*

729 F.2d 1136, 1142 (7th Cir.1984); *London v. Carson Pirie Scott & Co.*, 4 U.S.P.Q.2d 1148, 1151 n. 1, 1987 WL 11382 (N.D.Ill.1987). Analogously, if an organization's own name is generic, a competitor's subsequent use of that name may give rise to an unfair competition claim if the competitor's failure adequately to identify itself as distinct from the first organization causes confusion or a likelihood of confusion. *See Liquid Controls*, 802 F.2d at 939–40 (suggesting that "Liquid Controls Corp." could have a valid claim against "Liquid Control Corp." if there were more evidence of confusion than merely misdirected mail).

In either situation, the subsequent competitor cannot be prevented from using the generic term to denote itself or its product, but it may be enjoined from passing itself or its product off as the first organization or its product. Thus, a court may require the competitor to take whatever steps are necessary to distinguish itself or its product from the first organization or its product.

*Blinded Veterans Association v. Blinded American Veterans Foundation*, 872 F.2d 1035, 1043 (D.C.Cir.1989).[5]

▇▇▇ The likelihood of confusion exists when "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Fisons Horticulture, Inc. v. Vigoro Industries, Inc.*, 30 F.3d 466, 472 (3d Cir.1994) (quoting, *Dranoff–Perlstein Assoc. v. Sklar*, 967 F.2d 852, 862 (3d Cir.1992)). "Proof of actual confusion is not necessary; likelihood of confusion is all that need be shown." *Fisons, supra* (quoting, *Ford Motor*

*Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 292 (3d Cir.1991)). Moreover, it is not necessary to prove intent to deceive on the part of the passer off. *Blinded Veterans, supra* at 1045. Intent to deceive, where present, is, nonetheless, probative evidence of a likelihood of confusion. *Id.* Thus, under federal law, a company has a cause of action against a competitor, even though the company does not possess the exclusive right to use a particular term, where it can prove the likelihood of confusion.[6]

▇▇▇ We begin our analysis by examining PSU's complaint, in light of the trial court's conclusion that it failed to plead a claim of "passing off." After reviewing the complaint, we find that PSU did, in fact, specifically raise the "passing off" theory and pled sufficient facts to establish a claim of unfair competition. PSU alleged that its use of the word "university" in conjunction with its medical services, including orthopedic and sports medicine services, has come to indicate to actual and potential consumers that such services originate with PSU or from those affiliated with PSU. It further alleged that UO exploited a nonexistent relationship with PSU by advertising its orthopedic and sports medicine services using the word "university" and by suggesting or implying an affiliation with PSU. It also alleged UO's use of the word "university" was a deception of the public, that it was a false representation of fact likely to cause confusion as to the actual provider of the medical services and that UO was passing itself off as having an affiliation with PSU.

Additionally, in opposition to UO's motion for summary judgment, PSU submitted to the court documentary evidence which sup-

5. Under this theory, once a generic term becomes associated with a particular business or organization, regardless of *how* such association occurs, late-coming competitors may be required to distinguish themselves or their products to prevent confusion. *Id.* at 1044 n. 20.

6. With respect to the present case, we note that in the State College area, a number of businesses and organizations, not affiliated with PSU, use the word "university" in their respective names. This fact alone does not give rise to a cause of action for unfair competition. Before such a cause of action will accrue, there must, in addi-

tion, exist confusion or the likelihood of confusion between the product or service of PSU and the product or service of one of these other organizations. The mere fact that PSU does not or may not possess a cause of action for unfair competition against these other organizations is not in any way dispositive of its claims against UO. Under a "passing off" theory, each case must be examined on its facts to determine whether they establish confusion or the likelihood of confusion among the public of a plaintiff and a competitor.

ported the factual allegations of its complaint. This evidence consisted of a number of advertisements in which UO failed to include a disclaimer indicating that it was not affiliated with PSU and other advertisements in which the disclaimer was printed in the smallest available readable type. UO also distributed numerous "promotional" items, such as pens, T-shirts, sweatshirts, warm-up jackets, caps and refrigerator magnets, which contained the word "university" but did not include a disclaimer. There was also evidence that UO distributed advertisements at PSU sporting events. UO indicated in some advertisements that one of its physicians served as "Team Surgeon for Penn State athletes since 1989." Finally, the evidence submitted by PSU indicates that actual confusion occurred between its center for sports medicine and UO's practice. PSU documented at least 34 instances, over a seven-month period, when consumers of medical services or members of the medical community mistakenly contacted its Center for Sports Medicine, believing they were contacting UO.

In view of the pleadings and evidence of record, we conclude that there exists genuine issues of material fact as to whether UO's use of the generic word "university," in conjunction with its medical practice, would be reasonably likely to cause confusion or the likelihood of confusion among the public and whether consumers of medical services, viewing UO's name and advertisements, would be reasonably likely to assume an affiliation with PSU. As such, we conclude that the trial court erred in entering summary judgment in favor of UO on PSU's claim under § 43(a) of the Lanham Act.

PSU next contends the trial court erred in entering summary judgment on its common law unfair competition claim on the basis of its incorrect conclusion that PSU cannot claim an exclusive right to use of the word "university." As with its claim under the Lanham Act, PSU maintains that even if "university" is a generic term, it has pled sufficient facts and produced sufficient documentary evidence to show "passing off" and preclude the entry of summary judgment on

its common law unfair competition claim. We agree.

Common law liability for unfair competition (which includes trademark infringement) is governed by local law. *Goebel Brewing Co. v. Esslingers, Inc.*, 373 Pa. 334, 342, 95 A.2d 523, 525–26 (1953). Federal law, however, serves as persuasive authority because, for many years, it governed these areas almost exclusively and spawned a large body of federal decisions. *Id.* As with federal law, the common law of trademarks is a portion of the broader law of unfair competition. *Id.*

In *Hanover Star Milling Company v. Metcalf,* 240 U.S. 403, 413, 36 S.Ct. 357, 360, 60 L.Ed. 713, the Supreme Court said,—"This essential element (i.e., 'passing off' or deception) is the same in trademark cases as in cases of unfair competition unaccompanied with trademark infringement. In fact, the common law of trademarks is but a part of the broader law of unfair competition (citing cases)." The action for unfair competition "exists today separate and apart from any statutory rights which the owner of the trademark possesses". *House of Westmore, Inc. v. Denney,* 3 Cir., 151 F.2d 261; 265. In *Manz v. Philadelphia Brewing Co.,* D.C.E.D.Pa.1940, 37 F.Supp. 79, 80 it was recognized that " * * * trade-names can only be protected against use or imitation on the ground of unfair competition." The gist of the action lies in the deception practiced in "passing off" the goods of one for that of another. *See B.V.D. Co. v. Kaufmann & Baer Co.,* 272 Pa. 240, 242, 116 A. 508; *Pennsylvania Central Brewing Company v. Anthracite Beer Company,* 258 Pa. 45, 50, 101 A. 925; *Coca–Cola Co. v. Busch,* D.C.E.D.Pa.1942, 44 F.Supp. 405, 407. As was said in *Vick Chemical Co. v. Vick Medicine Co.,* D.C.S.D.Ga., 8 F.2d 49, 50, and quoted (a paraphrase) with approval in *Winthrop Chemical Co., Inc. v. Weinberg,* 3 Cir., 60 F.2d 461, 463,—"the 'underlying principle of law of unfair competition is to prevent substitution by deception,' a principle recognized by this court in *Rosenberg Bros. & Co. v. Elliott,* 3 Cir., 7 F.2d 962." *Id.*

The law of unfair competition also requires that a company, entering a field

already occupied by a rival of established reputation, "must do nothing which will unnecessarily create or increase confusion between his goods or business and the goods or business of the rival." *Id.* (quoting, *Gamlen Chemical Co. v. Gamlen,* D.C.W.D.Pa., 79 F.Supp. 622, 635–36, citing *Pennsylvania Central Brewing Company v. Anthracite Beer Company, supra*). Moreover,

> [t]he trading on another's business reputation by use of deceptive selling practices or other means is enjoinable on the grounds of unfair competition. If the particular use in question is reasonably likely to produce confusion in the public mind, equity will restrain the unfair practice and compel an accounting of the profits gained thereby. *Thomson–Porcelite Co. v. Harad,* 1947, 356 Pa. 121, 51 A.2d 605; *Stroehmann Bros. Co. v. Manbeck Baking Co.,* 1938, 331 Pa. 96, 200 A. 97; 87 C.J.S. Trade Marks, etc. §§ 91–93, pp. 325–333 (1954).

*Morgan's Home Equipment Corp. v. Martucci,* 390 Pa. 618, 635, 136 A.2d 838, 848 (1957).

■■■ As with federal law, descriptive, geographical and generic words, as well as words of common or general usage belong to the public and are not capable of exclusive appropriation. *Golden Slipper Square Club v. Golden Slipper Restaurant & Catering, Inc.,* 371 Pa. 92, 96, 88 A.2d 734, 736 (1952). However, a competitor's use of a name, label, symbol or trademark may be enjoined where the mark has acquired a secondary meaning. *Id.* In order to establish secondary meaning, it must be shown that people in the trade or the purchasing public perceives the word or name as standing for the business of a particular company. *Zimmerman v. Holiday Inns of America, Inc.,* 438 Pa. 528, 534, 266 A.2d 87, 90 (1970). A generic term, even where it has developed a secondary meaning, is never granted trademark protection. *A.J. Canfield, supra; see also Quality Weaving Co. v. Regan,* 245 Pa.Super. 66, 369 A.2d 296 (1976)(where a descriptive word lacks secondary meaning it is incapable of exclusive appropriation). Nonetheless, an action for unfair competition on the basis of a likelihood of confusion may still lie.

As noted *supra,* PSU's argument regarding the trial court's entry of summary judgment on its common law claim is identical to that proffered as to its federal claim under the Lanham Act. PSU argues that it does not have to prove it possesses a right to the exclusive use of the term "university"; and that even if "university" is a generic term, there are sufficient facts to support a claim of "passing off."

We agree with the trial court insofar as it concluded that PSU did not establish it possessed a legal right to the exclusive use of the word "university." A generic term by definition is incapable of exclusive appropriation. Nonetheless, as we have already concluded that summary judgment was improperly entered with respect to PSU's federal claim, we also now conclude, based upon the averments of fact in PSU's complaint and the documentary evidence submitted by PSU, that summary judgment was erroneously entered on PSU's common law unfair competition claim under a "passing off" theory. There exists genuine issues of material fact as to whether UO's use of the generic term "university," in conjunction with its medical practice, would be reasonably likely to cause confusion or the likelihood of confusion among the public and whether consumers of medical services viewing UO's name and advertisements would be reasonably likely to assume an affiliation with PSU. As such, the grant of summary judgment on this claim was improper.

We note that *Zimmerman v. Holiday Inns of America, Inc.,* 438 Pa. 528, 266 A.2d 87 (1970), *Quaker State Oil Refining Co. v. Steinberg,* 325 Pa. 273, 189 A. 473 (1937) and *Quality Weaving Co. v. Regan,* 245 Pa.Super. 66, 369 A.2d 296 (1976), relied upon by the trial court in support of its decision to grant summary judgment, do not require a contrary result.

In *Zimmerman,* plaintiff operated three motels in the Harrisburg area, each of which contained "Holiday" or "Holiday Inn" in its name. In 1952, plaintiff became the first to use the word "Holiday" in conjunction with a motel in Pennsylvania. In 1958, defendant Holiday Inns of America opened its first Pennsylvania "Holiday Inn," to be followed

by several more in the next five years. Plaintiff, in 1963, filed an equity action to enjoin defendant Holiday Inns of America from alleged unfair competition by its use of the name "Holiday Inn" in rendering hotel, motel and restaurant services within Pennsylvania. The trial court found that plaintiff had established a secondary meaning in the name "Holiday" in the Harrisburg area and enjoined defendant from encroaching on plaintiff's market area—a twenty-two mile radius from the center of Harrisburg.

On appeal, the Supreme Court affirmed. The court stated that an exclusive right to use a common word like "Holiday" will only exist where there is proof the word has taken a secondary meaning. This entails people in the trade or purchasing public coming to perceive the word or name as standing for the business of a particular owner. The court concluded the evidence supported the finding that plaintiff had established a secondary meaning of the word "Holiday" for a motel, but only within the twenty-two mile radius of Harrisburg.

*Zimmerman* is clearly distinguishable from the present case. PSU does not claim the right to exclusive use of the word "university," but rather, seeks protection against unfair competition by UO under a "passing off" theory. Failing to establish a right of exclusive use or a secondary meaning of "university," an injunction enjoining use of the word or name in controversy will not issue. Nonetheless, where unfair competition has been established, by proof of confusion or a likelihood of confusion under a "passing off" theory, other forms of injunctive relief may be available.

In *Quaker State*, the plaintiff sought to enjoin a competitor from using "Quaker City" or "Quaker" in connection with the sale of motor oil. In affirming the trial court's denial of an injunction, the Supreme Court concluded that a secondary meaning of the descriptive word "Quaker" had not been established. The Court also found that "passing off" was not established as there was no evidence the two products were deceptively similar. Indeed, the Court noted the names "Quaker State" and "Quaker City" were clearly different and the advertisements and containers of each company differed significantly. *Quaker State* differs and is distinguishable from the present case. Although PSU has not established a right of exclusive use or a secondary meaning of "university," it has produced sufficient evidence of "passing off" to preclude the entry of summary judgment.

In *Quality Weaving*, both plaintiff and defendant were in the label manufacturing business in the Philadelphia area and used the word "quality" in their respective company names. The trial court found that plaintiff's company name and the word "quality" had acquired a secondary meaning in the label industry, as both specifically indicated plaintiff's label business. Accordingly, the court enjoined defendant from using the word "quality" in conjunction with its label business in the Philadelphia area. On appeal, the Superior Court vacated the decree, finding that there was insufficient evidence to establish a secondary meaning of the descriptive word "quality." As such, the court concluded that plaintiff could not expropriate "quality" to its exclusive use in the context of the label business.

*Quality Weaving* only addressed the specific issue of whether plaintiff established a secondary meaning of the descriptive word "quality," such that defendant would be enjoined from its use in conjunction with its label business. It does not discuss a "passing off" theory or whether some other form of relief may be appropriate. The Court did indicate, however, that there was no evidence of "passing off" and that any confusion between plaintiff and defendant was both minimal and incidental. As such, this case lends nothing to our analysis of PSU's common law unfair competition claim.

■ PSU's final argument is the trial court erred in entering summary judgment on its breach of contract claim because the Release Agreement was legally enforceable and unambiguous and UO breached the agreement by failing to honor its contractual promise to use a disclaimer in its advertising and promotional literature. It further contends the court's conclusion that the agreement was not supported by consideration was erroneous because its promise to not commence suit on its unfair competition claims

constituted adequate consideration. Finally, PSU contends that it was entitled to judgment as a matter of law on its breach of contract claim in view of UO's admission that it failed to use a disclaimer in several instances.

The agreement entered into by PSU and UO provided that PSU would not sue to enforce its legal rights in exchange for UO's promise to:

include a disclaimer that it is not affiliated with the University in any and all advertisements and literature, in all television and/or radio commercials, and in all other materials and publications using the identifier "University" in association with or as part of an identifier for the Orthopedic Center.

The trial court concluded that, absent a proprietary right by PSU to control the use of the word "university," UO was free to use it without restriction and there was no consideration for UO's agreement to employ a disclaimer. Performance of an act that a person is already legally obligated to do is not sufficient consideration to support an agreement. *Cohen v. Sabin*, 452 Pa. 447, 453, 307 A.2d 845, 849 (1973). Similarly, the surrender of a nonexistent legal right is insufficient consideration. However, the surrender or compromise of a doubtful or disputed claim and forbearance to sue thereon is sufficient consideration. *Id.*

Here, PSU, as demonstrated by our discussion and analysis *supra*, clearly possessed legal recourse against UO which meets or exceeds the threshold of "a doubtful or disputed claim." PSU pled facts and produced documentary evidence which create genuine issues of material fact as to whether UO engaged in unfair competition by providing orthopedic and sports medicine services in the State College area. Moreover, there exists genuine issues of material fact in regard to UO's alleged breach of the Release Agreement. Although UO admittedly failed to include a disclaimer on several advertisements, it claims these omissions occurred infrequently, were a mere oversight and thus, do not constitute a material breach. Furthermore, it maintains, contrary to the assertions of PSU, that its failure to use a disclaimer on many other items, such as pens, T-shirts, sweatshirts, etc., not promotional in nature, was not covered by the agreement and does not constitute a material breach of the agreement. As such, we conclude the trial court erred in entering summary judgment on PSU's breach of contract claim.[7]

We conclude the trial court erred in entering summary judgment in favor of UO on its claim for unfair competition under § 43(a) of the Lanham Act, its claim for common law unfair competition and its claim for breach of contract. The court erroneously concluded that PSU had failed to plead the theory of "passing off" in relation to its claims for unfair competition and that PSU was required to prove an exclusive right to use of the word "university" in order to obtain relief. The court also erroneously concluded the Release Agreement entered into by PSU and UO was not supported by adequate consideration. Accordingly, we reverse the court's order entering summary judgment in favor of UO and remand the case for further proceedings consistent with this Opinion.[8]

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

7. PSU moved for partial summary judgment, alleging that it was entitled to judgment as a matter of law, on its breach of contract claim. In entering summary judgment on this claim for UO, the court implicitly denied PSU's motion. PSU now argues the trial court erred in denying its motion. An order denying a motion for summary judgment is interlocutory and thus, unappealable. *See* Pa.R.A.P. 341; *Youngman v. C.N.A. Insurance Co.*, 401 Pa.Super. 381, 585 A.2d 511 (1991). We are, therefore, without jurisdiction to review this claim as a separate issue. In any event, we have already concluded, on the basis of the record now before us, that genuine issues of fact exist as to whether a breach occurred. As such, PSU's motion for partial summary judgment was properly denied, albeit for reasons other than those articulated by the trial court.

8. We note the trial court also entered summary judgment on PSU's claim under Pennsylvania's anti-dilution statute. PSU has not challenged that determination on appeal. Thus, the claim has been abandoned.