J-A24035-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| LELAND HARDY AND THE BUSINESS INSTITUTE FOR CONTINUING EDUCATION IN PROFESSIONAL SPORTS (B.I.C.E.P.S.), | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, ARESTY INSTITUTE OF EXECUTIVE EDUCATION, WHARTON SCHOOL OF UNIVERSITY OF PA AND KENNETH L. SHROPSHIRE, | |
| Appellees | No. 381 EDA 2014 |

Appeal from the Order Dated December 4, 2013
in the Court of Common Pleas of Philadelphia County
Civil Division at No.: April Term, 2007, No. 002178

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED DECEMBER 26, 2014**

Appellants, Leland Hardy and The Business Institute for Continuing Education in Professional Sports (B.I.C.E.P.S.), appeal from the trial court's final December 4, 2013 order and prior orders, which collectively dismissed their complaint for intentional interference with business relationships, misappropriation of trade secrets, breach of contract, and related claims with prejudice.  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

The trial court summarized the factual and procedural history of this case as follows:

In 1998-1999, Hardy developed the B.I.C.E.P.S. Program ("Program"), an alleged novel and cutting edge concept to provide direct, customized business education for professional athletes in a business school setting. Hardy, an alumnus of the Wharton School, presented the Program to the Wharton School seeking aid in launching the program. Negotiations between [Appellants] and the Wharton School continued during the years 1999, 2000, and 2001. Hardy named the Program[,] "The Wharton Institute for Professional Athletes," and developed a three-day course curriculum with the assistance of Kenneth Shropshire, the Academic Director of the Wharton Institute for Professional Athletes. Hardy provided the Wharton School with $55,000 to cover various costs to initiate the Program.

On April 5, 2002, [Appellants] and the Wharton School reached agreements and the Program was presented at the Wharton School on July 17-19, 2002. Thereafter, Hardy initiated an aggressive promotional effort, which resulted in a content license and weblinking agreement with the Wharton School and a preliminary agreement with AIC Corporation to sponsor the [P]rogram's activities. In order to assist the sponsoring by the AIC Corporation, the Wharton School touted the success of the [P]rogram and the relationship between B.I.C.E.P.S. and the Wharton School.

On April [15], 2003, [Appellants] entered into a second agreement[,] which provided that the Program would be offered, in the same form as previously, at the Wharton School on June 3-6[,] 2003. [Appellants] allege the Wharton School without any warning repudiated the April 15, 2003 agreement.

In the meantime, [t]he Wharton School entered into an agreement with the National Football League and the National Football [League] Players Association to provide an education business program at the Wharton School to the league's athletes. The Wharton School's program took place on April 6-8, 2005 and was chaired by Shropshire. [Appellants] allege that the Wharton School [p]rogram contained a virtually identical curriculum as their [P]rogram.

On April 18, 2007, [Appellants] commenced an action by writ of summons against the Trustees of the University of Pennsylvania, The Aresty Institute of Executive Education of [t]he Wharton School of the University of Pennsylvania, [t]he Wharton School of the University of Pennsylvania and Kenneth Shropshire (collectively referred to as [Appellees]). On June 28, 2007, [Appellants] filed their complaint alleging claims for breach of contract, misrepresentation/fraud, theft of ideas, conversion, unjust enrichment, misappropriation of trade secrets, unfair competition, intentional interference with prospective business relationships, punitive damages and violations of the Uniform Trade Secrets Act.

Appellees filed preliminary objections to the complaint for lack of personal jurisdiction and legal insufficiency. On February 21, 2008, after oral argument, the [trial] court sustained the preliminary objections as they pertained to the claims for misrepresentation/fraud, theft of ideas, conversion, misappropriation of trade secrets, punitive damages and violations of the Uniform Trade Secrets Act. The [trial] court granted [Appellants] leave to amend the claim for tortious interference with prospective contractual relations. An amended pleading was never filed.

On February 28, 2008, [Appellees] filed a motion seeking clarification/reconsideration of the [trial] court[']s order dated February 21, 2008 regarding [Appellants'] claims for unjust enrichment and unfair competition. On March 3, 2008, the [trial] court denied [Appellees'] motion for clarification/reconsideration.

On January 21, 2009, the [trial] court granted [Appellees] permission to file any and all motions that they deemed necessary and proper regarding the sufficiency of the allegations in [Appellants'] complaint that dealt with either [Appellants'] right to recover damages and or any limitations on [Appellants'] right to recover damages. In accordance with said order, [Appellees][,] on February 3, 2009, filed a motion to dismiss the claims for unjust enrichment and unfair competition. On July 16, 2009, the [trial] court granted the motion to dismiss as it pertained to the unfair competition claim only and denied the motion as it pertained to the unjust enrichment claim.

On August 4, 2010, [Appellees] filed a renewed motion to dismiss the claim for unjust enrichment. On September 16, 2010, the [trial] court granted the motion and the claim for unjust enrichment was dismissed. On September 29, 2010, [Appellants] filed a motion for reconsideration of [the trial] court's order dated September 16, 2010. On October 7, 2010, the motion for reconsideration was denied. On January 13, 2011, [Appellees] filed a motion [for] summary judgment. On March 8, 2011, the motion for summary judgment was denied. On February 3, 2012, the parties filed a joint motion for extraordinary relief. On February 7, 2012, the [trial] court granted the motion for extraordinary relief and dismissed the remaining claim for breach of contract. . . .

(Trial Court Opinion, 7/30/12, at 1-4).

Appellants timely filed an appeal on March 6, 2012. On July 29, 2013, this Court quashed the appeal because the "count of intentional interference with prospective contractual relations . . . [was] never specifically dismissed . . . [or] disposed of, and [consequently] the February 6, 2012 order is not a final, appealable order." (**Hardy et al. v. Trs. of the Univ. of PA, et al.**, 1558 EDA 2012, unpublished memorandum at *3 (Pa. Super. filed July 29, 2013)).

On November 27, 2013, the parties filed a joint motion for extraordinary relief. The trial court granted the motion and dismissed the remaining count of intentional interference with business relationships on December 4, 2013. Appellants timely appealed on December 20, 2013.[1]

_____

[1] Pursuant to the court's March 8, 2012 order, Appellants timely filed a Rule 1925(b) statement on March 29, 2012. The court entered its Rule 1925(a) opinion on July 30, 2012. After Appellants timely appealed the December 4, 2013 order, the court did not order Appellants to file a Rule 1925(b)

*(Footnote Continued Next Page)*

- 4 -

Appellants raise the following issues for our review:

1. [Whether] [t]he [trial] [c]ourt erred as a matter of law in granting [Appellees'] [p]reliminary [o]bjections in finding that [Appellants'] claim for misrepresentation/fraud was barred by the "gist of the action" doctrine[?]

2. [Whether] [t]he [trial] [c]ourt erred as a matter of law in granting [Appellees'] [p]reliminary [o]bjections as to [Appellants'] conversion claim in finding that [Appellees'] did not commit conversion because they had retained a property interest in the program in question[?]

3. [Whether] [t]he [trial] [c]ourt erred as a matter of law in granting [Appellees'] [p]reliminary [o]bjections as to [Appellants'] claim for misappropriation of trade secrets by finding that [Appellants'] had failed to establish that the program in question constituted a trade secret[?]

4. [Whether] [t]he [trial] [c]ourt erred as a matter of law in granting [Appellees'] [p]reliminary [o]bjections as to [Appellants'] claim for violation of the Uniform Trade Secrets Act by finding that the information [Appellants'] sought to protect did not meet the definition of trade secret[?]

5. [Whether] [t]he [trial] [c]ourt erred as a matter of law in granting [Appellees'] [m]otion to [d]ismiss, a motion not authorized under Pennsylvania law, and dismissing [Appellants'] count for unfair competition[?]

6. [Whether] [t]he [trial] [c]ourt erred as a matter of law in granting [Appellees'] [r]enewed [m]otion to [d]ismiss, a motion not authorized under Pennsylvania law, and dismissing [Appellants'] count for unjust enrichment[?]

---

*(Footnote Continued)* ———————————

statement, but it entered its Rule 1925(a) opinion on January 2, 2014, in which it relied on its July 30, 2012 opinion. ***See*** Pa.R.A.P. 1925.

(Appellants' Brief, at 8) (footnote omitted).[2]

It is well-settled that:

> In reviewing a trial court's grant of preliminary objections, the standard of review is *de novo* and the scope of review is plenary. The salient facts are derived solely from the complaint and pursuant to that standard of review, the court accepts all well-pleaded material facts in the complaint, and all inferences reasonably deduced therefrom must be accepted as true.

***Martin v. Rite Aid of PA, Inc.***, 80 A.3d 813, 814 (Pa. Super. 2013)

(citation omitted).

> Since the Rules of Civil Procedure do not recognize a [m]otion to [d]ismiss as a separate motion, we will characterize it as a motion for summary judgment. When reviewing a grant of a motion for summary judgment, our review is plenary. We will not disturb the trial court's order absent an error of law or abuse of discretion. Where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***Long v. Ostroff***, 854 A.2d 524, 527-28 (Pa. Super. 2004), *appeal denied*,

871 A.2d 192 (Pa. 2005) (citations, brackets, and quotation marks omitted).

In their first issue, Appellants argue that the trial court erred in

dismissing their claim for misrepresentation and fraud under the gist of the

---

[2] Appellants note that, in effect, questions three and four raise identical issues, thus, "Appellants' will address these issues only once under question three." (Appellants' Brief, at 8 n.1). Accordingly, we also will review these claims as a single issue.

action doctrine where breach of contract is not the gist of the current action. (**See** Appellants' Brief, at 20-33). We disagree.

> The gist of the action doctrine forecloses tort claims (1) arising solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim.

***Indalex Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA***, 83 A.3d 418, 425 (Pa. Super. 2013), *appeal denied*, 99 A.3d 926 (Pa. 2014) (citation and quotation marks omitted).

Here, the record reflects that Appellants' contend that (1) Appellees misappropriated the concept embodied in the B.I.C.E.P.S. Program, disclosing it to the National Football League (NFL) and NFL Players Association (NFLPA), and marketing it as their own; (2) violated the confidentiality provision contained in the parties' April 2002 agreement; and (3) used the confidentiality agreement as a means to commit tortious acts against Appellants. (**See** Appellants' Brief, at 21, 24-26). All of these alleged acts of misrepresentation and fraud arose in the course of the parties' contractual relationship. Moreover, the parties' agreements created Appellees' duties regarding the B.I.C.E.P.S. Program. (**See** Agreement, 4/05/02; Agreement, 4/15/03).

Based on the foregoing, we conclude that the trial court properly determined that the gist of Appellants' misrepresentation and fraud action sound in contract. (**See** Trial Court Opinion, 2/21/08, at 4-5); ***see also***

*Indalex Inc., supra* at 425.  Accordingly, the trial court did not err as a matter of law and properly dismissed the misrepresentation and fraud claim under the gist of the action doctrine.  *See Indalex Inc., supra* at 425; *Martin, supra* at 814.  Appellants' first issue does not merit relief.

In their second issue, Appellants argue that the trial court erred in dismissing their claim for conversion on the basis that under the contract, Appellees retained a property interest in the intellectual material.  (*See* Appellants' Brief, at 33-39).  We disagree.

It is well-settled that:

> Conversion is defined as the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification.  When such an act occurs, the plaintiff may bring suit if he had an immediate right to possession of the chattel at the time it was converted.

*Bank of Landisburg v. Burruss*, 524 A.2d 896, 898 (Pa. Super. 1987), *appeal denied*, 532 A.2d 436 (Pa. 1987) (citations and quotation marks omitted).

Here, Appellants contend that Appellees "interfered with their use and benefit of the ideas and concepts generated and owned by Leland Hardy, thereby depriving them of the ability to use those ideas and concepts for profit."  (Appellants' Brief, at 35 (record citations omitted)).

However, our independent review of the record reflects that the "curriculum for the three[-]day B.I.C.E.P.S. Program was developed by [Appellant], Leland Hardy, with the aid and assistance of [Appellee],

- 8 -

Kenneth Shropshire[.]" (Complaint, 6/28/07, at 4 ¶ 9). Furthermore, "[n]egotiations and discussions continued [between the parties] with respect to the specific details of the B.I.C.E.P.S. Program at [Appellee,] Wharton, including . . . curriculum[.]" (*Id.* at 5 ¶ 11). Moreover, the 2002 and 2003 agreements state that, "[Appellee,] Wharton retains all rights, title, and interest in and to all materials developed by Wharton." (Agreement, 4/05/02, at unnumbered page 4; Agreement, 4/15/03, at unnumbered page 4). Additionally, Appellant, Leland Hardy, acknowledged that "Licensor [Appellee, Trustees of the University of Pennsylvania] owns all right, title and interest in the Licensor [c]ontent . . . ." (Content License and Weblinking Agreement, 7/27/02, at 7 ¶ 9.1).

Therefore, the trial court properly determined that Appellees retained a property interest in the intellectual material, which they had developed. (*See* Trial Ct. Op., 2/21/08, at 5-6); *see also Bank of Landisburg, supra* at 898. Accordingly, the trial court did not err as a matter of law and properly dismissed the conversion claim. *See Martin, supra* at 814; *Bank of Landisburg, supra* at 898. Appellants' second issue lacks merit.

In their third and fourth issues, Appellants argue that the trial court erred in dismissing their claim for misappropriation of trade secrets by finding that the B.I.C.E.P.S. Program is not a trade secret. (*See* Appellants' Brief, at 40-47). We disagree.

The determinative question in these claims is the interpretation of section 5302 of the Uniform Trade Secrets Act (UTSA). 12 Pa.C.S.A. §§

5301-5308. "Questions of statutory construction are questions of law; therefore, our review is de novo." **Betts Ind., Inc. v. Heelan**, 33 A.3d 1262, 1265 (Pa. Super. 2011) (citation omitted).

UTSA defines a trade secret as:

Information, including a . . . program . . . that:

> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

12 Pa.C.S.A. § 5302.

It is well-settled that:

> . . . Some factors which a court may consider in determining whether information qualifies as a trade secret include:
>
> > (1) the extent to which the information is known outside the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of the information; (4) the value of the information to the owner and to his competitors; (5) the amount of effort or money expended by the owner in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

**Iron Age Corp. v. Dvorak**, 880 A.2d 657, 663 (Pa. Super. 2005) (citation omitted).

- 10 -

Here, the record reflects that Appellants promoted the B.I.C.E.P.S. Program to the NFLPA and specified that "**The Wharton School has created a program** . . . [and] presents B.I.C.E.P.S. . . . ." (Complaint, 6/28/07, Marketing Brochure, at Exhibit F) (emphases added).

Moreover, the information was generally known and marketed to the public. Appellants presented and promoted the program and its materials to increase exposure to target markets. (*See id.* at 6-7 ¶¶ 14-17 (describing promotional efforts and efforts to obtain increased exposure); and Marketing Brochure, at Exhibit F).

Furthermore, Appellants failed to show that they made reasonable efforts to maintain the B.I.C.E.P.S. Program's secrecy. (*See* Complaint, 6/28/07, at 6-7 ¶¶ 14-17).

Therefore, the trial court properly determined that the B.I.C.E.P.S. Program is not a trade secret because:

> (a) the information was well within the public domain, (b) no measures were taken to ensure the secrecy of the information, and (c) the relative ease in which one could properly acquire and duplicate the information. . . . One would only have to enroll in the course in order to access all of the alleged "secret" information.

(Trial Ct. Op., 2/21/08, at 6-7); *see also* 12 Pa.C.S.A. § 5302; *Iron Age Corp.*, *supra* at 663. Accordingly, the trial court did not err as a matter of law and properly dismissed the misappropriation of trade secrets claims. *See Betts Ind., Inc., supra* at 1265; *Martin, supra* at 814. *See also* 12

Pa.C.S.A. § 5302; *Iron Age Corp.*, *supra* at 663.  Appellants' third and fourth issues lack merit.

In their fifth issue, Appellants argue that the trial court erred in dismissing their claim for unfair competition where it found that Appellants "lacked the necessary ownership interest to allege a claim for unfair competition." (Appellants' Brief, at 47; *see id.* at 50-52).  Additionally, Appellants argue that Appellees "lacked any authority to file their motion [to dismiss] . . . ." (*Id.* at 49).  We disagree.[3]

It is well-settled that "[a] claim of unfair competition encompasses trademark infringement, but also includes a broader range of unfair practices, which may generally be described as a misappropriation of the skill, expenditures and labor of another." *PA State Univ. v. Univ. Orthopedics, Ltd.*, 706 A.2d 863, 867 (Pa. Super. 1998) (citation omitted). Additionally, "[t]he gist of the action lies in the deception practiced in 'passing off' the goods of one for that of another." *Id.* at 870 (citation omitted).

Here, because we have concluded that the trial court properly determined that Appellees retained a property interest in the intellectual

---

[3] Appellees filed their motion to dismiss in accordance with the trial court's January 21, 2009 order, which specifically granted them permission to file "any and all motions . . . regarding the sufficiency of allegations in [Appellants'] complaint that deal with either [Appellants'] right to recover damages and/or any limitations on [Appellants'] right to recover damages." (Order, 1/21/09, at unnumbered pages 1-2).

material, the claim of unfair competition fails for Appellants' lack of the requisite ownership. (*See* Trial Ct. Op., 7/30/12, at 4); *see also PA State Univ.*, *supra* at 867, 870.

Moreover, Appellants have failed to support their claim that Appellees have "passed off the program as their own creative design, thereby deceiving and confusing their consumers . . . ." (Appellants' Brief, at 50). The record reflects that Appellees created the program. (*See* Complaint, 6/28/07, at 4-5 ¶¶ 9, 11; Marketing Brochure, at Exhibit F). They retained an intellectual property interest in the program. (*See* Agreement, 4/05/02, at unnumbered page 4; Content License and Weblinking Agreement, 7/27/02, at 7 ¶ 9.1; Agreement, 4/15/03, at unnumbered page 4). Appellees marketed their 2005 program as "business education . . . to assist players in preparing for their post-playing career. . . . It focuses on personal investments as well as entrepreneurial opportunities for players transitioning from their football careers." (Complaint, 6/28/07, News Release, at Exhibit O).

Additionally, there is no non-compete clause in any of the parties' agreements, therefore, no unfair competition. (*See* Agreement, 4/05/02; Content License and Weblinking Agreement, 7/27/02; Agreement, 4/15/03).

Accordingly, the trial court did not err as a matter of law and properly dismissed the unfair competition claim. *See Long*, *supra* at 527-28; *PA State Univ.*, *supra* at 867. Appellants' fifth issue lacks merit.

In their final issue, Appellants argue that the trial court erred in dismissing their claim for unjust enrichment and refusing to find that "the conduct of the parties at issue goes well beyond the scope of their agreements." (Appellants' Brief, at 53; *see id.* at 52-59). Additionally, Appellants argue that Appellees "lacked any authority to file their motion [to dismiss] . . . ." (*Id.* at 54; *see id.* at 53-54). We disagree.[4]

It is well-settled that "[a]n action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law. A quasi-contract imposes a duty, not as a result of any agreement . . . but in spite of the absence of an agreement . . . ." *Discover Bank v. Stucka*, 33 A.3d 82, 88 (Pa. Super. 2011) (citations and quotation marks omitted). Additionally, "the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how harsh the provisions of such contracts may seem in the light of subsequent happenings." *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006) (citations and quotation marks omitted).

Here, the record reflects that three distinct contracts govern the parties' relationship. (*See* Complaint, 6/28/07, at 5-8 ¶¶ 13, 16, 19; Agreement, 4/05/02; Content License and Weblinking Agreement, 7/27/02; Agreement, 4/15/03).

---

[4] *See* footnote 4, *supra* (quoting Order, 1/21/09, at unnumbered pages 1-2).

Therefore, the trial court properly determined that an express written contract existed between the parties. (***See*** Trial Ct. Op., 7/30/12, at 4-5); ***see also Discover Bank***, ***supra*** at 88; ***Wilson Area Sch. Dist.***, ***supra*** at 1254. Accordingly, the trial court did not err as a matter of law and properly dismissed the unjust enrichment claim. ***See Long***, ***supra*** at 527-28; ***Discover Bank***, ***supra*** at 88; ***Wilson Area Sch. Dist.***, ***supra*** at 1254. Appellants' sixth issue lacks merit.

Order affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date: 12/26/2014*